# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**VITAMIN ENERGY, INC.**

      Plaintiff,

**v.**

**MANOJ BHARGAVA, LIVING ESSENTIALS, LLC, INTERNATIONAL IP HOLDINGS, LLC, INNOVATION VENTURES, LLC**

      Defendants.

Case No.  2:24-cv-13125-JJCG-EAS

Judge Jonathan J.C. Grey
Magistrate Judge Elizabeth A. Stafford

*JURY TRIAL DEMANDED*

## DEFENDANTS' MOTION TO DISMISS

**REDACTED**

Defendants Manoj Bhargava, Living Essentials, LLC, International IP Holdings, LLC, and Innovation Ventures, LLC (collectively "Defendants"), by and through their counsel, hereby move to dismiss Vitamin Energy's Complaint in its entirety under Fed. R. Civ. P. 12(b).

Vitamin Energy's lawsuit is a baseless attempt to mischaracterize the Defendants' legitimate business practices as anticompetitive and deceptive. Defendants, including the creators of 5-hour ENERGY®, have built their success through innovation, marketing, and product quality—not anti-competitive activity.

First, Vitamin Energy's Sherman Act claims lack merit because they fail to demonstrate harm to competition; ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Additionally, Plaintiff's Complaint fails to establish antitrust standing because it does not allege the requisite market-wide harm or a causal link to its alleged injury. The attempted monopolization claim is also deficient because it lacks allegations regarding specific intent or anticompetitive conduct.

Second, Plaintiff's false advertising claim should be dismissed because the challenged phrases, "Back to 100%" and "Fixes Tired Fast®," are not literally false. The latter is an incontestable trademark, meaning its use cannot constitute false advertising under the Lanham Act. Plaintiff also fails to plead that the challenged phrases convey a single, unambiguous false message to consumers, as ambiguous statements cannot be deemed literally false. Furthermore, both phrases qualify as non-actionable puffery since they are subjective and lack measurable or concrete

1

meaning. Plaintiff does not provide factual allegations showing that consumers were misled or that the advertisements caused actual harm. Finally, Plaintiff fails to establish a causal link between Defendants' advertising and any injury, making the claim speculative and insufficient under the Lanham Act.

Third, Plaintiff's civil conspiracy claim is invalid under the intra-corporate conspiracy doctrine, as it targets entities under common control.

Finally, the allegations against Defendant Manoj Bhargava are vague and unsupported, failing to establish any wrongdoing in his individual capacity. The lawsuit should be dismissed with prejudice in its entirety.

On February 7, 2025, in accordance with Local Rule 7.1(a), Plaintiffs' counsel and Defendant's met and conferred regarding this motion but were unable to reach resolution.

The factual and legal bases supporting this Motion are included in the accompanying Brief.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  February 10, 2025

  /s/ Christopher C. Smith
Marc Lorelli (P63156)
Thomas W. Cunningham (P57899)
Chelsea E. Pasquali (P77375)
Christopher C. Smith (P73936)
Francesca M. Cusumano (P85410)
150 W. Second St., Suite 400N
Royal Oak, Michigan 48067-3846
Telephone: (248) 358-4400
Facsimile: (248) 358-3351

2

Email:  mlorelli@brookskushman.com
tcunningham@brookskushman.com
cpasquali@brookskushman.com
csmith@brookskushman.com
fcusumano@brookskushman.com

*Attorneys for Defendants'*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**VITAMIN ENERGY, INC.**

     Plaintiff,

**v.**

**MANOJ BHARGAVA, LIVING ESSENTIALS, LLC, INTERNATIONAL IP HOLDINGS, LLC, INNOVATION VENTURES, LLC**

     Defendants.

Case No.  2:24-cv-13125-JJCG-EAS

Judge Jonathan J.C. Grey
Magistrate Judge Elizabeth A. Stafford

*JURY TRIAL DEMANDED*

## DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

**REDACTED**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT..............................................................................................2

    A.    Plaintiff fails to plead a proper Antitrust violation ..............................2

        1.    Plaintiff lacks Antitrust standing because it fails to allege facts that Defendants' conduct caused market-wide harm to competition ................................................................... 3

        2.    Plaintiff fails to sufficiently plead an attempted monopoly claim......................................................................... 7

            a.    Plaintiff fails to allege anticompetitive conduct.............. 8

            b.    Plaintiff fails to sufficiently plead that Defendants had a specific intent to monopolize ................................. 8

        3.    Plaintiff fails to sufficiently plead a monopolization claim........................................................................... 9

            a.    Plaintiff misrepresents the correct market and sub-market .......................................................... 10

            b.    Plaintiff fails to plead willful acquisition of a monopoly share through anticompetitive conduct ........ 12

    B.    Plaintiff fails to sufficiently plead a false advertising claim...............12

        1.    The challenged advertisements are not literally false as a matter of law ............................................................. 13

            a.    "Fixes Tired Fast®" is an incontestable registered trademark and thus, cannot be false advertising............ 13

            b.    Plaintiff's literal falsity claim fails because Plaintiff failed to plead that the challenged ads convey a single, unambiguous claim that is false ......... 15

i

2.      Plaintiff's Complaint fails to plausibly allege that
        Defendants' advertising is misleading consumers and
        harmed Plaintiff........................................................................ 18

        a.      Plaintiff's claim fails to plead facts sufficient to
                establish that the challenged ads deceive a
                significant portion of reasonable consumers ................. 19

3.      Plaintiff fails to allege facts to support its conclusory
        allegation of harm resulting from Defendants' advertising..... 23

C.      Plaintiff fails to sufficiently plead its civil conspiracy claim.............26

D.      Plaintiff's Complaint fails to state a viable claim against Manoj
        Bhargava as an individual ...................................................................27

1.      Mr. Bhargava's corporate position alone does not confer
        individual liability under Section 2 of the Sherman Act ......... 28

2.      Plaintiff has not properly pled that Mr. Bhargava is
        individually liable for the alleged false advertising................ 31

3.      Mr. Bhargava's actions as a corporate officer does not
        render him separately liable for civil conspiracy.................... 32

III.    CONCLUSION..............................................................................................33

# TABLE OF AUTHORITIES

## Cases

*ABG Prime Grp., LLC v. Innovative Salon Prods., LLC*,
    No. 17-12280, 2018 WL 3474587 (E.D. Mich. July 19, 2018) ......................3

*ACT, Inc. v. Worldwide Interactive Network*,
    No. 3:18-CV-186, 2020 WL 12574235 (E.D. Tenn. Mar. 24, 2020)............29

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.*,
    194 Mich. App. 300, 486 N.W.2d 351 (1992) .............................................27

    *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. Podiatric Surgery, Inc.*,
    185 F.3d 606 (6th Cir. 1999) .................................................... vii, 18

*Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*,
    990 F. Supp.2d 1254 (M.D. Fla. 2013) ................................................ viii, 33

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*,
    917 F.2d 1413 (6th Cir. 1990) .........................................................................8

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)..........................................................................................3

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
    528 F.3d 426 (6th Cir. 2008) ................................................... vii, 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................... vii, 5

*Brown v. Donco Enterprises, Inc.*,
    783 F.2d 644 (6th Cir. 1986) .................................................. vii, 28, 29, 30

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*,
    429 U.S. 477 (1977)..........................................................................................6

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986)..........................................................................................3

iii

*CBC Companies, Inc. v. Equifax, Inc.*,
    561 F.3d 569 (6th Cir. 2009) ........................................................................4

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984)............................................................................... vii, 27

*Davis v. Avvo, Inc.*,
    345 F. Supp. 3d 534 (S.D.N.Y. 2018) ........................................................21

*Days Inn Worldwide, Inc. v. Adrian Motel Co., LLC*,
    No. 07-13523, 2009 WL 3199882 (E.D. Mich. Sept. 30, 2009)..................31

*Dodge Data & Analytics LLC v. iSqFt, Inc.*,
    183 F. Supp. 3d 855 (S.D. Ohio 2016)................................................ vii, 8, 9

*Doron Precision Systems, Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173  (S.D.N.Y.2006) .........................................................18

*Eastman Outdoors, Inc. v. Blackhawk Arrow Co.*,
    329 F. Supp. 2d 955 (E.D. Mich. 2004) .....................................................20

*Feinberg v. Katz*,
    No. 99 Civ. 45 (CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002) .........28

*Fieger v. Cox*,
    524 F.3d 770 (6th Cir. 2008) ......................................................................27

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011). ................................................ 21, 22

*Gutierrez v. Lynch*,
    826 F.2d 1534 (6th Cir. 1987) ....................................................................27

*Helene Curtis Industries v. Milo Corporation*,
    1985 WL 1282 (N.D. Ill. May 2, 1985).......................................................14

*Herman Miller, Inc. v. Palazzeti Imports & Exports*,
    270 F.3d 298 (6th Cir. 2001) ............................................................... 24, 25

*Indeck Energy Servs., Inc. v. Consumers Energy Co.*,
    250 F.3d 972 (6th Cir. 2000) ...........................................................................4

*International IP Holdings, LLC v. Vitamin Energy, Inc.*,
    No. 2:19-cv-11716 (E.D. Mich. 2019) ...........................................................4

*Jeandron v. Board of Regents of University System of Maryland*,
    510 Fed.Appx. 223  (4th Cir.2013) ....................................................... vii, 18

*Kent v. AVCO Corp.*,
    815 F. Supp. 67 (D. Conn. 1992)..................................................................28

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
    588 F.3d 908 (6th Cir. 2009) ................................................................ vii, 10

*Lambert v. Hartman*,
    517 F.3d 433 (6th Cir. 2008) .......................................................................26

*Landmark Sav. & Loan v. Loeb Rhoades Hornblower & Co.*,
    527 F.Supp. 206 (E.D. Mich. 1981) ..................................................... viii, 33

*Lewis v. Acuity Real Estate Services*, LLC
    597F. Supp. 3d 1154  (E.D. Mich. 2022) ....................................................21

*Lynch v. Southampton Animal Shelter Found. Inc.*,
    278 F.R.D. 55 (E.D.N.Y. 2011)....................................................................28

*Manchouck v. Mondelez Int'l Inc.*,
    No C 13-02148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013)........21

*Michigan Div.-Monument Builders of N. Am. v. Michigan Cemetery Ass'n.*,
    524 F.3d 726 (6th Cir. 2008) .........................................................................3

*Musleh v. Am. Steamship Co.*,
    326 F. Supp.3d 507 (E.D. Mich. 2018) .......................................................18

*Nathenson v. Zonagen Inc.*,
    267 F.3d 400 (5th Cir. 2001) .......................................................................22

*Nellcor Puritan Bennett LLC v. Cas. Med. Sys., Inc.*,

11 F. Supp. 3d 861 (E.D. Mich. 2014) ..........................................................24

*NicSand, Inc. v. 3M Co.,*
    507 F.3d 442 (6th Cir. 2007) ................................................. vii, 3, 4

*O'Toole v. Northrop Grumman Corp.,*
    499 F.3d 1218 (10th Cir.2007)) ...................................................18

*Park 'n Fly v. Dollar Park and Fly, Inc.,*
    469 U.S. 189 (1985)........................................................ vii, 13, 14

*PPG Indus., Inc. v. Payne,*
    No. 3:10-CV-73, 2012 WL 1836314 (E.D. Tenn. May 21, 2012) ...............26

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
    124 F.3d 430 (3d Cir. 1997) .................................................. vii, 11

*Re/Max Int'l, Inc. v. Realty One, Inc.,*
    173 F.3d 995 (6th Cir. 1999) ......................................................10

*Richter Concrete Corp. v. Hilltop Concrete Corp.,*
    691 F.2d 818 (6th Cir.1982) .........................................................8

*Scilex Pharms., Inc. v Sanofi-Aventis U.S. LLC,*
    No. 21-CV-01280-JST, 2022 WL 20286688 (N.D. Cal. Feb. 24, 2022) ......22

*Scotts Co. v. United Indus. Corp.,*
    315 F.3d 264 (4th Cir. 2002) ................................................ 16, 17

*SFS Check, LLC v. First Bank of Delaware,*
    774 F.3d 351 (6th Cir. 2014) ......................................................24

*Shaker v. Nature's Path Foods, Inc.,*
    No. EDCV 13-1138-GW OPX, 2013 WL 6729802 (C.D. Cal. Dec. 16,
2013) 20

*Sheridan Furniture, Inc. v. Kincaid Furniture Co.,*
    No. CIV.A. 3:98-CV-16-R, 1999 WL 33603128 (W.D. Ky. Nov. 24, 1999)
26

*Smith Wholesale Co. v. Philip Morris USA, Inc.*,
219 F. App'x 398 (6th Cir. 2007) ............................................................ vii, 7

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
697 F.3d 387 (6th Cir. 2012) .........................................................................29

*Tang v. Putruss*,
No. 06-12624, 2007 WL 2909527 (E.D. Mich. Oct. 5, 2007) ......................24

*Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*,
12 F.3d 609 (6th Cir. 1993) .............................................................................7

*Tennessean Truckstop, Inc. v. NTS, Inc.*,
875 F.2d 86 (6th Cir.1989) ...................................................................... vii, 3

*Thermos Co v. Igloo Products Corp.*,
1995 WL 842002 (N.D. Ill.1995), ................................................................13

*Thomas v. Noder-Love*,
621 F. App'x 825 (6th Cir. 2015) ..................................................................18

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007) ............................................................................v

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430 (6th Cir. 2008) .........................................................................10

*Tropf v. Holzman & Holzman*,
No. 257019, 2006 WL 120377 (Mich. Ct. App. Jan. 17, 2006)....................33

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
964 F.2d 1022 (10th Cir. 1992) .....................................................................31

*UBS Auction Rate Securities Litigation*,
No. 08 Civ 2967(LMM), 2010 WL
2541166 (S.D.N.Y. June 10, 2010) ...............................................................18

*Uncommon, LLC v. Spigen, Inc.*,
926 F.3d 409 (7th Cir. 2019) ........................................................................13

*United States v. Grinnel Corp.*,
    384 U.S. 563 (1966)..................................................................................10

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)...................................................................................8

*Wysong Corp. v. APN, Inc. (17-1975)*,
    889 F.3d 267 (6th Cir. 2018) ....................................... vii, 15, 19, 21

*Zobmondo Ent., LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010) .................................................................13

## Statutes

15 U.S.C. § 15b...........................................................................................29

15 U.S.C. §1052..........................................................................................13

15 U.S.C. §1064..........................................................................................14

15 U.S.C. §1065..........................................................................................13

15 U.S.C. §1115..........................................................................................14

TMEP §1209.04 ..........................................................................................13

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................................ vii

Fed. R. Civ. P. 12(f) ..................................................................................28

## MOST CONTROLLING AUTHORITY

1. Fed. R. Civ. P. 12(b)(6)

2. Fed. R. Civ. P. 12(f)

3. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

4. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

5. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007).

6. *Tennessean Truckstop, Inc. v. NTS, Inc.*, 875 F.2d 86, 88 (6th Cir.1989).

7. *Smith Wholesale Co. v. Philip Morris USA, Inc.*, 219 F. App'x 398, 409 (6th Cir. 2007).

8. *Dodge Data & Analytics LLC v. iSqFt, Inc.*, 183 F. Supp. 3d 855, 865 (S.D. Ohio 2016).

9. *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 917 (6th Cir. 2009).

10. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436 (3d Cir. 1997).

11. *Park 'n Fly v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 196 (1985).

12. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007).

13. *Wysong Corp. v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018).

14. *Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x. 223, 227 (4th Cir. 2013).

15. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999).

16. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984).

17. *Brown v. Donco Enterprises, Inc.*, 783 F.2d 644, 646 (6th Cir. 1986).

18. *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp.2d 1254, 1275 (M.D. Fla. 2013).

19. *Landmark Sav. & Loan v. Loeb Rhoades Hornblower & Co.*, 527 F.Supp. 206, 209 (E.D. Mich. 1981).

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Should the Court dismiss Plaintiff's Antitrust claims under Fed. R. Civ. P. 12(b)(6) for failure to allege an antitrust injury?

   **Defendants Answer**: YES

2. Should the Court dismiss Plaintiff's Attempted Monopolization Antitrust claim under Fed. R. Civ. P. 12(b)(6) for failure to allege anticompetitive conduct and specific intent to monopolize?

   **Defendants Answer**: YES

3. Should the Court dismiss Plaintiff's Monopolization Antitrust claim under Fed. R. Civ. P. 12(b)(6) for failure to allege sufficient facts to establish the relevant market, and failure to allege acquisition of a monopoly share through anticompetitive conduct?

   **Defendants Answer**: YES

4. Should the Court dismiss Plaintiff's False Advertising claims under Fed. R. Civ. P. 12(b)(6) where Defendant's accused advertisements are not literally false and the Complaint fails to allege misleading customers and harm to Plaintiff?

   **Defendants Answer**: YES

5. Should the Court dismiss Plaintiff's Civil Conspiracy claim under Fed. R. Civ. P. 12(b)(6) where the Complaint admits Defendants are under common control and direction?

   **Defendants Answer**: YES

6. Should the Court dismiss Plaintiff's claims against Mr. Manoj Bhargava in his individual capacity be dismissed under Fed. R. Civ. P. 12(b)(6) where its Complaint fails to allege facts regarding his individual liability outside of his corporate position.

   **Defendants Answer**: YES

## I.    INTRODUCTION

This lawsuit represents Vitamin Energy's ("Plaintiff") final, futile attempt to reframe Defendants' legitimate, successful, and longstanding business practices as anticompetitive and deceptive. Manoj Bhargava, International IP Holding, LLC, Innovation Ventures, LLC, and Living Essentials, LLC ("Defendants"), pioneers of the energy shot and custodians of the industry-leading 5-hour ENERGY® brand, have consistently competed through innovation, marketing, superior product quality, and their well-deserved reputation. The claims brought in the present lawsuit are meritless and should be dismissed per Federal Rules of Civil Procedure 12(b)(6).

**<u>First</u>**, Plaintiff's Sherman Act claims are flawed as they fail to allege any harm to competition. Contrary to Plaintiff's speculative (alleged "on information and belief") representations in the Complaint, ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████

**<u>Second</u>**, Plaintiff lacks antitrust standing, as it fails to allege an injury stemming from any competition-reducing effects of Defendants' conduct. The Sixth Circuit consistently requires antitrust plaintiffs to plead both a market-wide harm to competition and a causal connection between that harm and their own injury—burdens Plaintiff has not met. Similarly, Plaintiff's attempted monopolization claim is deficient because it lacks allegations of specific intent, actionable anticompetitive conduct, or a probability of success in monopolizing any relevant market.

**Third**, Plaintiff's assertion that Defendants' use of "Back to 100%" and "Fixes Tired Fast®" is false advertising must fail. Fixes Tired Fast® is an incontestable trademark, and thus, its use cannot constitute false advertising as a matter of law. Further, Plaintiff's false advertising allegations fail to allege any *facts* that support the elements of the claim. Finally, because these statements constitute at most inactionable puffery – dismissal should be with prejudice.

**Fourth**, Plaintiff's civil conspiracy claim is barred by the intra-corporate conspiracy doctrine, which precludes claims of conspiracy among entities operating under common control.

**Finally**, the conclusory allegations against Defendant Manoj Bhargava fail to establish any actionable conduct by him as an individual. Plaintiff relies on vague assertions and outdated incidents, none of which tie Mr. Bhargava to any purported wrongdoing under the Sherman Act, Lanham Act, state law, or otherwise.

Plaintiff's Complaint should be dismissed with prejudice in its entirety.

## II.   ARGUMENT

### A.   Plaintiff fails to plead a proper Antitrust violation

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Specifically, in antitrust litigation, a district court "retain[s] the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Michigan Div.-Monument Builders of N. Am. v. Michigan Cemetery Ass'n.*, 524 F.3d

726, 732 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 558); *Twombly*, 550 U.S. 544. Indeed, "[i]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Id.* at 546. The Complaint fails to sufficiently plead an antitrust violation in view of the applicable standards.

### 1.   Plaintiff lacks Antitrust standing because it fails to allege facts that Defendants' conduct caused market-wide harm to competition

Antitrust standing is a threshold, "pleading-stage" inquiry separate from Article III standing. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007). Antitrust standing "ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (original emphasis included). To avoid dismissal for lack of standing, a complaint must show an antitrust injury. *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986); *NicSand, Inc.*, 507 F.3d at 450.

In the Sixth Circuit a two-prong test for antitrust injury requires: "(1) that the alleged violation tends to reduce competition in some market and (2) that the plaintiff's injury would result from a decrease in that competition rather than from some other consequence of the defendant's actions." *Tennessean Truckstop, Inc. v. NTS, Inc.*, 875 F.2d 86, 88 (6th Cir. 1989); *see also ABG Prime Grp., LLC v. Innovative Salon Prods., LLC*, No. 17-12280, 2018 WL 3474587, at *4 (E.D. Mich. July 19, 2018). The critical inquiry is whether competition itself—not merely a

3

competitor—has been harmed. *CBC Companies, Inc. v. Equifax, Inc.*, 561 F.3d 569, 571–72 (6th Cir. 2009). To sufficiently allege harm to competition, a plaintiff must plausibly demonstrate an adverse effect on prices, output, or the quality of goods in the relevant market that caused their injuries. *NicSand*, 507 F.3d at 458. Otherwise, "routine disputes between business competitors would be elevated to the status of an antitrust action, thereby trivializing the Act[.]" *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 976 (6th Cir. 2000).

Plaintiff does not plead facts sufficient to show market-wide injury to competition. Instead, Plaintiff claims "[o]n information and belief" that Defendants entered into an agreement with Pilot to "remove competing energy shots, including Vitamin Energy shots, from preferred counter placements near the cash register" and that such an agreement constitutes anticompetitive conduct. (ECF No. 1, PageID.23, ¶ 87.) ████████████████████████████████████████████

---

[1] The Court should consider the agreements, article, and related court filings attached as Exhibits 1-11 because they are (1) public records, or (2) referenced in Vitamin Energy's Complaint and are central to its Sherman Act claims. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider. . .public records . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein."). Exhibits 1-3 are the Agreements referenced in the Complaint and form the basis of Vitamin Energy's antitrust claims. Exhibit 4 is a public record of South Carolina Case No. 2024-CP-38-00342 filed by Vitamin Energy, while Exhibits 5-10 are public records from *International IP Holdings, LLC v. Vitamin Energy, Inc.*, No. 2:19-cv-11716 (E.D. Mich. 2019). Exhibit 11 is referenced in ¶ 56 of the Complaint. Finally, Exhibit 12 is referenced in ¶ 136 of the Complaint.



Even more troubling is that Plaintiff **_knew_** that Pilot was **_not_** giving 5-hour ENERGY® products preferred placement at Pilot Flying J locations when it filed its Complaint. Indeed, in another Vitamin Energy lawsuit filed against Pilot, Pilot notes—in its May 6, 2024, Answer—that "Pilot Travel Centers' stores also sell

Vitamin Energy's energy shots ***at the point of sale***." [2] (Ex. 4, ¶ 24.) Plaintiff's claims that Defendants have anticompetitive agreements with customers is contrary to the record in Plaintiff's other lawsuits! Yet Plaintiff continues to peddle its false claims in this case, alleging that "on information and belief. . . 5-hour Energy became the only energy shot displayed at the POS point-of-sale in Pilot stores." (ECF No. 1, PageID.24, ¶ 90.) Plaintiff's "on information and belief" claims are devoid of facts and clearly disingenuous in view of the information previously disclosed to Plaintiff in its other litigation.

Further, any refusal by Pilot to prominently display Plaintiff's product in Pilot Flying J stores appears to be the fault of Plaintiff. Indeed, in that very same lawsuit, Pilot alleges that Plaintiff "has failed to pay Pilot Defendants ***any amounts*** for the Space Payment and all amounts due for the Rebate" and "owes Pilot Defendants approximately ***$130,000***." (Ex. 4, ¶¶ 101-102.) Nothing in the record indicates that Defendants have—through retailer agreements or otherwise—caused Plaintiff's products to be removed from prominent display locations. As such, the Defendant's Energy Rack Program cannot be considered anticompetitive conduct nor constitute an injury "of the type the antitrust laws were intended to prevent," i.e., reduced competition in the relevant market. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977).

Plaintiff also references an email exchange with Hucks in its Complaint— speculating that Living Essentials' retail agreement with Huck's is exclusive. (ECF

---

[2] Emphasis added unless otherwise noted.

No. 1, PageID.35, ¶ 136.) ████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

    Finally, to the extent any harm has been pleaded, that harm is limited only to Plaintiff's personal harm as a competitor to the 5-hour ENERGY® products, and not harm to the market. Indeed, Plaintiff fails to raise any allegations that Defendants' actions have caused any adverse effects on prices, output, or the quality of goods in the relevant energy drink market. The alleged harm does not reflect harm experienced by the market, as the law requires.

### 2.    Plaintiff fails to sufficiently plead an attempted monopoly claim

    To state a claim for attempted monopolization under Section 2 of the Sherman Act, a plaintiff must allege: "(1) a specific intent to monopolize; (2) anti-competitive conduct; and (3) a dangerous probability of success." *Smith Wholesale Co. v. Philip Morris USA, Inc.*, 219 F. App'x 398, 409 (6th Cir. 2007) (*citing Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 615 (6th Cir. 1993)).

    Plaintiff fails to meet this standard. Its attempted monopolization claim relies on allegations of "illegal placement agreements" that, as discussed above, do not constitute anticompetitive conduct actionable under the Sherman Act. Furthermore, Plaintiff fails to plead facts sufficient to establish either the requisite specific intent to monopolize or a dangerous probability of success in achieving monopoly power.

### a.   Plaintiff fails to allege anticompetitive conduct

The Sixth Circuit defines anticompetitive conduct as "conduct designed to destroy competition, not just to eliminate a competitor." *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 823 (6th Cir.1982). Similarly, the Supreme Court has emphasized that "to safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis omitted).

As discussed above, the Living Essentials' retailer programs were not designed to destroy competition. To the contrary, under those programs, Plaintiff's products continue to be sold at the point of sale at retailers like Pilot. (Ex. 4, ¶ 24.)

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

### b.   Plaintiff fails to sufficiently plead that Defendants had a specific intent to monopolize

"Specific intent to monopolize may be inferred from evidence of anticompetitive conduct, *but not from legitimate business practices aimed only at succeeding in competition*." *Dodge Data & Analytics LLC v. iSqFt, Inc.*, 183 F. Supp. 3d 855, 865 (S.D. Ohio 2016) (*quoting Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1432 (6th Cir. 1990)).

Here, Plaintiff makes the general allegation that "Defendants' actions demonstrate a specific intent to monopolize and/or to restrict and destroy competition" in the alleged markets. (ECF No. 1, PageID.61, ¶ 231.) Plaintiff does not allege facts demonstrating specific intent by the Defendants to achieve monopoly power. And Plaintiff does not provide proper allegations showing any actions taken by Defendants specifically intended to "destroy" its competition. Plaintiff's conclusory statements are insufficient and should be disregarded.

To the contrary, Defendants' actions show that they were operating with "*legitimate business practices aimed only at succeeding in competition*." *Dodge Data*, 183 F. Supp. 3d at 865. ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ Indeed, Vitamin Energy's energy shots have been offered for sale at the point of sale at several Pilot retail locations. (Ex. 4, ¶ 24.)

Defendants' Agreements are not evidence of anti-competitive conduct from which the Court should infer intent. Quite the opposite. ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ Their use is for legitimate business practices.

### 3. Plaintiff fails to sufficiently plead a monopolization claim

To establish monopolization under Section 2, a plaintiff must show: "(1) the ***possession of monopoly power in the relevant market*** and (2) the ***willful acquisition***

9

*or maintenance of that power* as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1016 (6th Cir. 1999) (*quoting United States v. Grinnel Corp.*, 384 U.S. 563, 570-71 (1966)).

Plaintiff's allegations fail to meet these standards. The Complaint lacks factual support to demonstrate either monopoly power in the relevant market or willful conduct aimed at acquiring or maintaining such power. Instead, the alleged conduct appears consistent with legitimate business practices, which are not actionable under the Sherman Act.

### a.   Plaintiff misrepresents the correct market and sub-market

Plaintiff fails to plead sufficient facts to establish the possession of monopoly power in the relevant market. The first element of a monopoly claim requires a well-pleaded definition of both the product and geographic markets allegedly subject to the defendant's monopoly power. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008).

"The essential test for ascertaining the relevant product market" is the "reasonable interchangeability standard." *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 917 (6th Cir. 2009) (quotation marks omitted). Reasonable interchangeability is assessed by examining two factors: (1) product uses, whether substitute products can perform the same function, and (2) consumer response, also known as cross-elasticity of demand, which measures

consumer sensitivity to price changes that lead them to choose substitutes for the defendant's product or service. *Id.* (quotation marks omitted.)

A proposed market is legally insufficient where it fails to account for reasonable interchangeability or cross-elasticity of demand. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436 (3d Cir. 1997). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Id.* (affirming dismissal on this basis).

Here, Plaintiff's proposed "market for 2-ounce energy shots" and its sub-market for "premium [] 2-ounce energy shots" are legally deficient. (ECF No. 1, PageID.58, ¶¶ 213-214.) The alleged markets fail to encompass all interchangeable substitute products, even when all factual inferences are drawn in Plaintiff's favor. Indeed, Plaintiff's own comparative advertising demonstrates that the relevant market includes energy shots, energy drinks, and even coffee. (Ex. 5.) Critically, Plaintiff provides no factual allegations regarding reasonable interchangeability or cross-elasticity of demand for products inside or outside the purported markets.

Moreover, Plaintiff's own Complaint undermines its market definition. Indeed, Plaintiff lumps energy shots and larger drinks together when it discusses the relevant market reports, which do the same. For example, discussing the respected Mintel Reports, Plaintiff alleges that "convenience stores have historically sold from

11

63% to over 70% of all **energy drinks**." (ECF No. 1, PageID.9, ¶¶ 31-33.) This acknowledgment contradicts Plaintiff's artificially narrow energy shot and premium energy shot market definitions.

> ### b.   Plaintiff fails to plead willful acquisition of a monopoly share through anticompetitive conduct

To support its assertion that Defendants obtained monopoly power in the alleged markets, Plaintiff primarily focuses on a 2012 interview with Mr. Manoj Bhargava, a founder of the 5-hour ENERGY® brand. However, Plaintiff selectively quotes from the interview, ignoring statements by Mr. Bhargava attributing 5-hour ENERGY®'s success to the quality of its product. Specifically, Mr. Bhargava stated, "When you try it, you like it, and the other people come in, [but] the product's just not that good." (*See*,  https://www.youtube.com/watch?v=tcuZhRYM7sM.) This context undermines Plaintiff's narrative and reinforces that Defendants' market success stems from legitimate business practices, not anticompetitive conduct.

Because Plaintiff has not alleged facts demonstrating willful, unlawful conduct aimed at acquiring or maintaining monopoly power, its claim must fail.

## B.   Plaintiff fails to sufficiently plead a false advertising claim

Plaintiff asserts that Defendants' use of the phrases "Back to 100%" and "Fixes Tired Fast®" is false advertising. For the reasons discussed below, Plaintiff's false advertising claim should be dismissed.

## 1. The challenged advertisements are not literally false as a matter of law

### a. "Fixes Tired Fast®" is an incontestable registered trademark and thus, cannot be false advertising

The USPTO granted Defendants' registration of its Fixes Tired Fast® mark for energy shots and dietary supplements in 2012.[3,4] The Lanham Act precludes registration for many reasons, including if the mark is deceptive, deceptively misdescriptive, or merely descriptive. 15 U.S.C. §1052(a), (e). By registering a mark, the USPTO has determined the mark is **not** merely descriptive, is **not** deceptively misdescriptive, and is **not** deceptive – and instead, acts as a source identifier (i.e., a brand). TMEP §1209.04.

Moreover, the Fixes Tired Fast® mark became *incontestable* pursuant to 15 U.S.C. §1065 on July 28, 2017, which is only available to long-standing trademarks. (Ex. 7, Notice of Acceptance at p. 15.) Incontestable status is a "pinnacle of trademark status," *Thermos Co. v. Igloo Prods. Corp.*, No. 93 C 5826, 1995 WL 842002, at *3 (N.D. Ill. Sept. 27, 1995), and preludes attacks on the owner's use of the mark on the goods specified in the registration. *Park 'n Fly v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 196 (1985) (explaining incontestable status can be used

---

[3] Plaintiff falsely alleges Defendants began using this mark in 2023 and 2024. (ECF No. 1, PageID.49, ¶ 169.) Public records demonstrate Plaintiff knows this is false. The U.S. Trademark Office confirms Defendants' mark was used as early as 2011 and **registered as a trademark in 2012**. (Ex. 6, TM Reg. No. 4,144,236 at p. 2.)

[4] Significantly, the USPTO granted the application without requiring the submission of evidence of secondary meaning, meaning that it is not descriptive. *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010)); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 424 (7th Cir. 2019) (same).

13

offensively and defensively). In the language of the Lanham Act, "the registration shall be conclusive evidence of … the registrant's exclusive right to use the registered mark in commerce. Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified." 15 U.S.C. §1065; 15 U.S.C. §1064.[5] Put another way, Defendants' certificate of registration (Ex. 6 at p. 2) with its incontestability status is **conclusive** evidence that Fixes Tired Fast® is (1) not descriptive, (2) not deceptive, (3) not deceptively misdescriptive and, (4) Defendants have the right to use Fixes Tired Fast® in commerce with respect to energy products.

Plaintiff's Lanham Act-based claim thus seeks to divest Defendants of the affirmative rights *granted to Defendants by the USPTO based on the Lanham Act*. Defendants cannot circumvent the Act and the USPTO in this way. If Plaintiff wishes to attempt to limit the rights granted by the Act and the USPTO, its only avenue is a direct attack on the *validity* of the mark (not its purported deceptiveness) by petitioning the USPTO for cancellation or in an action before the district court on the validity issue. *Helene Curtis Indus., v. Milo Corp.*, No. 84 C 5217, 1985 WL 1282, at *2-3 (N.D. Ill. May 2, 1985). But here, Plaintiff does not challenge the validity of Defendants' mark.

_____

[5] The ability to cancel incontestable trademarks under the Lanham Act is extremely limited. 15 U.S.C. §1115(b). Circumstances justifying cancellation expressly *exclude* whether the mark is merely descriptive, deceptive, or deceptively misdescriptive. *Park 'n Fly*, 469 U.S. at 216. Thus, to prevail on its false advertising claim, Defendant must first show that: "that the registration or the incontestable right to use the mark was obtained fraudulently." 15 U.S.C. §1115(b)(1). Defendant has not and cannot make such a showing, even at the pleading stage.

Plaintiff's claim based on this mark fails because "*[a]s a matter of law, a party cannot base a claim for false advertising on a trademark owner's use of its own registered mark; this is so where, as here, the registrations are incontestable*." *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc*., No. 19-CV-01424-YGR, 2020 WL 95638, at *1 (N.D. Cal. Jan. 8, 2020).[6] As such, Plaintiff's claim that Defendants use of "Fixes Tired Fast®" is false advertising fails as a matter of law and should be dismissed pursuant.

### b. Plaintiff's literal falsity claim fails because Plaintiff failed to plead that the challenged ads convey a single, unambiguous claim that is false

Plaintiff's literal falsity claim also fails because its Complaint is devoid of any factual allegation that "Back to 100%"[7] and "Fixes Tired Fast®" advertisements, individually or in combination, convey a single, unambiguous message to energy product consumers.

An *ambiguous* advertising claim cannot be literally false as a matter of law. *Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 158 (2d Cir. 2007); *Wysong Corp. v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018) ("only an

---

[6] Indeed, to entertain Defendants' contrary approach would subject any number of incontestable trademarks to false advertising claims. For example, allowing a Lanham Act claim that the "Coca-Cola®" mark is false advertising because the associated soft drink contains neither coca extract (cocaine) nor kola nuts would cause chaos, and that is why long-standing incontestable trademarks are isolated from such claims.

[7] In paragraph 157 of the Complaint, Plaintiff alleges the "Back to 100%" ads ran from 2019 to the present. This is not true. Plaintiff alleges no facts that Plaintiff promoted "Back to 100%" within the Statute of Limitations period.

'unambiguously' deceptive message can be literally false"). An advertising claim is ambiguous where it is susceptible to more than one reasonable interpretation by consumers. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 275 (4th Cir. 2002); *Time Warner*, 497 F.3d at 158 ("[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false.")

*First*, Plaintiff's literal falsity claim for "Fixes Tired Fast®" fails because, as discussed above, the USPTO found that phrase conveys a brand; in other words, consumers view it as a source identifier and not as a description of a product characteristic. Thus, even accepting Plaintiff's conclusory allegations as true, the claim cannot be literally false as a matter of law because it is susceptible to more than one meaning – at least one of which is a brand. *Time Warner*, 497 F.3d at 158.

*Second*, even assuming *arguendo* the Court credits Plaintiff's unsupported and implausible interpretations of the claims, Plaintiff's literal falsity claim still fails because Plaintiff does not allege, nor could Plaintiff allege, facts to support that its interpretation of the claims is the sole, unambiguous message conveyed to consumers. Thus, Plaintiff's literal falsity claim fails.

Indeed, Plaintiff could not amend to plausibly assert that those who see Fixes Tired Fast® come away with the singular impression that Defendants' 5-hour ENERGY® shots (1) "will always provide a complete cure to tiredness" and (2) "are superior to other energy shots on the market." (ECF No. 1, PageID.52-53, ¶¶ 181-184.) Nor could Plaintiff plausibly assert that every consumer who sees "Back to 100%" comes away with the singular impression that Defendants' 5-hour ENERGY® shots (1) will cause them to "regain their full 100% energy" and (2) "are

16

superior to other energy shots on the market." (ECF No. 48, PageID.48-49, ¶¶ 165, 168). Plaintiff's Complaint falls far short of the requirements in Rule 8 because it provides only conclusory allegations and is completely devoid of any factual support. Indeed, consumers would more plausibly understand that, when viewing the ads in context (which indicate the products have caffeine and vitamins), the products provide a quick boost of energy.  Because these ads, at most, could be understood as conveying different messages to consumers, they are ambiguous and any claim of literally falsity fails as a matter of law. *Time Warner*, 497 F.3d at 158; *Scotts*, 315 F.3d at 275.

Finally, besides some unsupported conclusory assertions, no facts are presented to establish literally falsity. Such conclusory assertions of falsity, without factual support, do not meet the pleading standard. *FedEx Ground Package System, Inc. v. Route Consultant, Inc.,* 97 F.4th 444, 454 (6th Cir. 2024) ("[A] complaint may not baldly assert that a challenged statement is false or misleading. It must explain *why* and *how* it is so.") (emphasis in original).

Moreover, to the extent Plaintiff alleges that Defendants' products do not provide weary consumers a quick energy boost, those allegations are flatly contradicted by the record. Indeed, ***Plaintiff itself*** advertised that 5-hour ENERGY® provides "More energy than 1 cup of coffee." (Ex. 8 at p. 13.) Plaintiff's Complaint shows that regular strength 5-hour ENERGY® includes, among other ingredients, 200mg of caffeine and extra strength includes 230mg of caffeine. (*Vitamin Energy I*, ECF 1, PageID.50, 53-54, ¶¶ 170, 191.) Plaintiff itself advertises that its own energy shots provide an "instant surge of energy" and its consumers "Felt Energized

17

Very Quickly after taking the Shot and Felt less Fatigued Throughout the Day." (Ex. 9 at p. 2; Ex. 5 at p. 3.)[8] *Such is the point of energy drinks.* Plaintiff has pled no facts that even attempt to show that "Fixes Tired Fast®" or "Back to 100%" are unambiguously false as used on energy drinks. As such, Plaintiff's claim of literal falsity should be dismissed.

### 2.   Plaintiff's Complaint fails to plausibly allege that Defendants' advertising is misleading consumers and harmed Plaintiff

Since it cannot prove literal falsity, Plaintiff's claim only survives if Plaintiff adequately pled facts to support the claim that the challenged ads are "misleading." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999). Because Plaintiff failed to do so, its false advertising claim should be dismissed.

---

[8] "In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency." *Musleh v. Am. Steamship Co.*, 326 F. Supp.3d 507, 514 (E.D. Mich. 2018); *see also Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015). "A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination." *Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x. 223, 227 (4th Cir. 2013) (Unpub. Disp.) *citing* Fed. R. Evid. 201(b); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007)); *In re UBS Auction Rate Sec. Litig.,* No. 08 Civ. 2967 (LMM), 2010 WL 2541166, *15 (S.D.N.Y. June 10, 2010) (It is "appropriate to take judicial notice of the contents of a party's website"); *Doron Precision Sys., Inc. v. FAAC, Inc*., 423 F. Supp.2d 173, 179 n. 8 (S.D.N.Y. 2006).

### a.   Plaintiff's claim fails to plead facts sufficient to establish that the challenged ads deceive a significant portion of reasonable consumers

To prevail on its "misleading" claim, Plaintiff must prove that Defendants made a misleading "description of fact," which deceived a "significant portion" of reasonable consumers. *Am. Council*, 185 F.3d at 616. "At the motion-to-dismiss stage … we ask whether the facts in the complaint support a plausible inference that the challenged advertisements in fact misled a significant number of reasonable consumers." *Wysong Corp. v. APN, Inc.*, 889 F.3d at 271 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)); *Am. Council*, 185 F.3d at 614 (discussing how to establish a Lanham Act claim at the judgment-as-a-matter-of-law phase). "[J]udicial experience and common sense" must guide this Court. *Id.*

Plaintiff asserts, in a conclusory fashion, that Defendants' "Back to 100%" ads "deceive a substantial portion of the intended audience into believing" that 5-hour ENERGY® will cause them to "regain their full 100% energy." (ECF No. 1, PageID.48, ¶ 165.) Plaintiff similarly asserts that Defendants' Fixes Tired Fast® ads "leave[s], the false and/or misleading impression that, among other things, Defendants' 5-hour ENERGY shots" … "will always provide a complete cure to tiredness." Plaintiff further alleges that both ads mislead consumers into believing 5-hour ENERGY® shots "are superior to other energy shots on the market." (*Id.*, PageID.52, ¶¶ 181, 183.) Yet, ***nowhere does Plaintiff plead any facts*** to support these strained interpretations of the ads and thus, the claims fail. *Twombly*, 550 U.S. at 558.

19

Nor could Plaintiff amend to meet this standard because the consumer deception inquiry is governed by the "reasonable consumer standard." *See, Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 507 (6th Cir. 2015); *see also, Blue Buffalo Co. v. Nestle Purina Petcare Co.*, No. 4:15 CV 384 RWS, 2015 WL 3645262, at *3 (E.D. Mo. June 10, 2015) (collecting cases). Even at the motion to dismiss stage, courts look beyond the plaintiff's self-serving interpretation of a claim and instead focus on how a reasonable consumer would understand it. *See, e.g.*, *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW OPX, 2013 WL 6729802, at *5 (C.D. Cal. Dec. 16, 2013). Moreover, to determine whether an advertisement is false, the Court must consider the "whole context of the challenged advertisement" (*Wysong*, 889 F.3d at 271) and it is the actual advertising—not Plaintiff's allegations of implied meaning—that must be analyzed. *Eastman Outdoors, Inc. v. Blackhawk Arrow Co.*, 329 F. Supp. 2d 955, 960 (E.D. Mich. 2004) (dismissing false advertising claim because it was based on claimant's interpretation of the statements rather than on statements themselves).

Applying the reasonable consumer standard here, no reasonable consumer would be deceived by Defendants' advertising. Indeed, for the "Back to 100%" ads, consumers are shown with batteries over their heads implying a level of energy. (ECF No. 1, PageID.43-46, ¶¶ 158, 160.) No reasonable consumer would believe they have a measurable battery, which depicts their current energy level that goes to 100% after taking the product. The ads, viewed in full context and considering the advertising of other energy products in the market, simply convey the message that if you are feeling drained, you can take 5-hour ENERGY® and receive an energy

boost. Nowhere does Plaintiff explain how the ads misled consumers considering the whole context of the challenged ads. *Wysong*, 889 F.3d at 271 ("complaints did not explain how the photographs are supposed to have misled consumers in light of the whole context of the challenged advertisements. And that is a problem."); *Manchouck v. Mondelez Int'l Inc*., No C 13-02148 WHA, 2013 WL 5400285, at *1, *2–*3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 Fed. Appx. 632 (9th Cir. 2015) ("made with real fruit" on defendants' "Newton" cookies not misleading because it is "ridiculous" for a reasonable consumer to expect cookies represented to be "made with real fruit" to contain only "actual [fruit].")

Indeed, as the *Wysong* court noted, "reasonable consumers know that marketing involves some level of exaggeration—what the law calls 'puffery.'" *Wysong*, 889 F.3d at 271. And here, Plaintiff's false advertising claim fails because, at most, the "Fixes Tired Fast®" and "Back to 100%" ads merely represent nonactionable puffery – not descriptions of fact. Puffery is a non-definitive statement or claim that cannot be proven true or false. *Davis v. Avvo, Inc.,* 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011). Puffery is a claim that is subjective – not specific and measurable. *Time Warner Cable,* 497 F.3d at 159; *Lewis v. Acuity Real Est. Servs.*, LLC, 597 F. Supp. 3d 1154, 1160 (E.D. Mich. 2022). Puffery is non-actionable under the Lanham Act, and appropriate for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Time Warner Cable,* 497 F.3d at 159; *see also Wysong*, 889 F.3d at 271-73 (dismissing false advertising claim as puffery on a motion to dismiss); *Davis*, 345 F. Supp. 3d at 542.

21

Here, the challenged advertisements are subjective, not specific, nor measurable.  Indeed, for "Fixes Tired Fast®," being "tired" is a subjective feeling – it means different things to different people and is clearly not measurable. If one yawns once, are they tired? If one runs up five flights of stairs, are they tired? Or just winded? And what does it mean to "fix" tired? Plaintiff's assertion that it conveys that the product "always provide[s] a complete cure" further illustrates the subjectiveness of the claim. Indeed, Plaintiff's attempts to add the words "always" and "complete cure" into its strained interpretation to overcome the subjectivity. However, those words appear nowhere in the phrase.

In addition, numerous courts have found that use of the term "fast" is puffery. *See Fink*, at 644 (Stating that "blazing fast" and "fastest, easiest" are "classic examples of generalized puffery."); *Scilex Pharms., Inc. v Sanofi-Aventis U.S. LLC*, No. 21-CV-01280-JST, 2022 WL 20286688, at *8 (N.D. Cal. Feb. 24, 2022) (Dismissing false advertising claim with prejudice based on "fast acting" claim because numerous cases found "Fast acting" to be subjective, non-actionable puffery); *Nathenson v. Zonagen Inc*., 267 F.3d 400, 420 (5th Cir. 2001).

For the "Back to 100%" ads, even assuming arguendo that it conveys that consumers who take 5-hour ENERGY® will "regain their full 100% energy," this is not in any way measurable. The concept of 100% energy means different things to different people, and it may mean different things to the same people on different days or even different times the same day. It is clearly not quantifiable, nor measurable – it is the definition of puffery.  Both claims illustrate why Plaintiff failed to plead facts that the claims are false – ***one cannot determine if they are false***.

Lastly, contrary to Plaintiff's assertion, nowhere does either challenged statement convey that "5-hour Energy shots are superior to other energy shots on the market," as Plaintiff asserts. (ECF No. 1, PageID.48-49, 52-53, ¶¶ 168, 181-182.) It is not a comparison claim, does not mention other energy shots, and makes no superiority clam.

Plaintiff fails to allege any facts that would show that "Fixes Tired Fast®" or "Back to 100%" ads are actionable false advertising. Both are unmeasurable, unquantifiable, and subjective – the exact type of statement contemplated by courts in declining to recognize puffery as a "description of fact" required to constitute false advertising. The claims should be dismissed.

### 3.   Plaintiff fails to allege facts to support its conclusory allegation of harm resulting from Defendants' advertising

Plaintiff asserts, in a conclusory fashion and without factual support, that Defendants' use in advertising, of "Fixes Tired Fast®" and "Back to 100%," alone or in combination, constitutes false advertising that has caused it harm. But Plaintiff again fails to establish Lanham Act standing and fails to state a claim for which relief can be granted. Plaintiff's claims should be dismissed for this additional reason.

The Court has *twice* determined that Plaintiff has not alleged any facts that would establish any causal link between Defendants' advertising ("Back to 100%") and any harm to Plaintiff. (Ex. 10) (dismissing false advertising counterclaim and denying leave to file amended counterclaim as futile because "none of [Vitamin Energy's] arguments allege new facts that establish that [International IP Holdings'] actions caused [Vitamin Energy's] alleged injuries.")). This new Complaint adds no

new facts.

Lanham Act causation requires a causal link between Defendants' alleged false advertising and Plaintiff's alleged harm. *See Herman Miller, Inc. v. Palazzeti Imports & Exports*, 270 F.3d 298, 323 (6th Cir. 2001); *see also Nellcor Puritan Bennett LLC v. Cas. Med. Sys., Inc.*, 11 F. Supp. 3d 861, 870 (E.D. Mich. 2014) (a plaintiff seeking monetary relief must prove that the false advertisement caused it actual harm). Plaintiff simply ignores its burden under the Lanham Act to establish that a "significant portion of the consumer population" was actually deceived by the advertising at issue by "perceiv[ing] the advertising in a way that misled them ***about the plaintiff's product***." *Herman Miller*, 270 F.3d at 323. And Plaintiff makes no effort to "establish … there is some causal link between the challenged statements and harm to the plaintiff." *Id*. Instead, Plaintiff improperly relies on conclusory allegations devoid of any *factual* content whatsoever.

Contrary to the federal pleading requirements, Plaintiff has not asserted a single allegation on this issue that goes beyond the mere recitation of the element or bare, conclusory assertions that Defendants' alleged false advertising caused it to lose sales. *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) ("A pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action.'"); *Tang v. Putruss*, No. 06-12624, 2007 WL 2909527, at *4 (E.D. Mich. Oct. 5, 2007) (a mere statement that one party was harmed by another's "false and misleading advertisements" is "insufficient under *Twombly* to adequately allege harm because it does nothing more than recite the elements of the claim."). This is evident on the face of Plaintiff's scant

allegations relating to causation:

> By misleading and deceiving consumers that 5-hour Energy shots have attributes and benefits that they do not have, Defendants trick consumers into buying 5-hour Energy shots in lieu of Vitamin Energy shots. (ECF No. 1, PageID.54, ¶ 194.)

> By misleading and deceiving consumers that 5-hour Energy shots have attributes and benefits that they do not have, Defendants dissuade consumers who have tried and do not like 5-hour Energy shots from trying other energy shots, such as Vitamin Energy, which has attributes and benefits that industry marketing data suggests that energy shot consumers want. (*Id.*, PageID.55, ¶ 195.)

> Defendants ubiquitous market presence, obtained and sustained through successive waves of false advertising, drowns out the truthful information available to consumers about energy shots such as Vitamin Energy in a manner that suppresses consumer demand for Vitamin Energy products and so negatively impacts sales of Vitamin Energy shots. (*Id.*, ¶ 196.)

> Defendants' false and misleading commercial advertising in commerce has directly and proximately caused and will continue to cause irreparable and economic injury to Vitamin Energy, including loss of good will, reputational harm, loss of business, loss of sales, loss of revenues, and loss of profits. (*Id.*, PageID.64-65, ¶ 247.)

Plaintiff baldly asserts that Defendants' advertising deceives ***consumers*** – offering no facts to support the assertion. Plaintiff also fails to meet its burden because the Lanham Act requires that actual consumers be deceived by the advertising at issue by "perceiv[ing] the advertising in a way that misled them ***about the plaintiff's product***." *Herman Miller*, 270 F.3d at 323. Yet, Plaintiff offers no facts to "establish … there is some causal link between the challenged statements and harm ***to the plaintiff***." *Id.*

The Court is not obligated to simply accept these conclusory allegations as true. Rather, "[t]he court should first identify any conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief." *Tate v. Gen. Motors LLC*, No. 11-CV-12028, 2011 WL 6792762, at *1(E.D. Mich. Dec. 27, 2011), citing *Iqbal* 556 U.S. at 679. Plaintiff "must do more than create speculation or suspicion of a legally cognizable cause of action; [it] must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (internal citations and quotations omitted) (emphasis in original).

Thus, Plaintiff's Complaint lacks any of the factual enhancements necessary to move Plaintiff's bare assertions beyond mere speculation. Absent the required factual enhancements above, Plaintiff's bald assertions of causation are nothing more than speculation, which is fatal to its Complaint. *See PPG Indus., Inc. v. Payne*, No. 3:10-CV-73, 2012 WL 1836314, at *15 (E.D. Tenn. May 21, 2012) ("Without evidence of a causal link, any damages would be purely speculative and prohibited by the Lanham Act"); *Sheridan Furniture, Inc. v. Kincaid Furniture Co.*, No. CIV.A. 3:98-CV-16-R, 1999 WL 33603128, at *5 (W.D. Ky. Nov. 24, 1999).

Plaintiff's false advertising claims are woefully deficient and should be dismissed with prejudice.

## C.   Plaintiff fails to sufficiently plead its civil conspiracy claim

Under Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or

to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 486 N.W.2d 351, 358 (1992). "Pleading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient" to state a claim for conspiracy. *Id.,* citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

In *Copperweld Corp. v. Indep. Tube Corp*, the Supreme Court held that a parent corporation and its wholly owned subsidiary "are incapable of conspiring with each other for purposes of § 1 of the Sherman Act." 467 U.S. 752, 777 (1984). The court explained that although a parent and its wholly owned subsidiary are "separate" for the purposes of incorporation or formal title, they are controlled by a single center of decision making and they control a single aggregation of economic power. *Id*. at 769. Joint conduct by two such entities does not "depriv[e] the marketplace of independent centers of decision making," and as a result, an agreement between them does not constitute a "contract, combination ..., or conspiracy" for the purposes of § 1. *Id.*

Plaintiff admits that "Defendants are under common control and direction in the enterprise of marketing, distributing and selling 5-hour Energy shots." (ECF No. 1, PageID.57, ¶ 205.) Thus, by Plaintiff's very own admission, Living Essentials, International IP Holdings, and Innovation Ventures are incapable of conspiring with one another under the Sherman Act. As such, this claim must be dismissed.

**D.    Plaintiff's Complaint fails to state a viable claim against Manoj Bhargava as an individual**

27

### 1. Mr. Bhargava's corporate position alone does not confer individual liability under Section 2 of the Sherman Act

To establish individual liability, Plaintiff must sufficiently allege that Mr. Bhargava "actively and knowingly engaged in a scheme designed to achieve anticompetitive ends,. . .[and] the evidence must demonstrate that a defendant exerted influence so as to shape corporate intentions." *Brown v. Donco Enterprises, Inc.*, 783 F.2d 644, 646 (6th Cir. 1986). Plaintiff's Complaint includes no such allegations.

To start, nearly all of Plaintiff's allegation about Mr. Bhargava address his status with the corporate defendants in ***2012 or earlier***[9]—several years before (1)

---

[9] This Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Paragraphs 14(d) and 47-55 of Plaintiff's Complaint are wholly immaterial to the issues in this case. For example, Plaintiff alleges that Defendant Bhargava has been "widely alleged" to create companies for the purpose of cheating on taxes. (ECF No. 1, PageID.6, ¶ 14(d).) This scandalous, factually unsupported allegation is made solely to disparage Mr. Bhargava and is not relevant to any issues in the Complaint. *Feinberg v. Katz*, No. 99 Civ. 45 (CSH), 2002 WL 1751135, at *20-21 (S.D.N.Y. July 26, 2002). Paragraph Nos. 47-55, 145-146, and 154 relate to allegations made in and about Defendants' previous litigation that occurred over ten years ago, and have no bearing on the issues raised in the present Complaint. The sole purpose of those allegations is to place Defendants in a negative light. But such irrelevant assertions have no place in Plaintiff's legal pleadings; the paragraphs should be stricken. S*ee, e.g., Kent v. AVCO Corp.*, 815 F. Supp. 67, 71 (D. Conn. 1992) ("References to other litigation and the context in which they are made, are improper and irrelevant when they are asserted in an unrelated complaint before the court." (quotation omitted)); *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 68 (E.D.N.Y. 2011). Moreover, these allegations will only lead to unnecessary discovery and satellite litigation into their veracity and merit. For example, the purported false "advertisement" referenced in Paragraph Nos. 47-51 was never litigated to finality on the merits in the cases the Complaint identifies, but that same advertisement was

the statute of limitations would have lapsed on those actions, and (2) Plaintiff began selling its energy shot (2018). (15 U.S.C. § 15b; ECF No. 1, PageID.11-15, 17, ¶¶ 41-54, 60.) The majority of Plaintiff's ancient allegations focus on the corporate Defendants' *successful* litigations enforcing their rightful trademark rights in the 5-hour Energy brand. Such litigations are not the type of anti-competitive behavior actionable under Section 2 of the Sherman Act. *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 408 (6th Cir. 2012) (under the *Noerr-Pennington* doctrine, "the act of filing suit generally does not constitute an antitrust injury."); *ACT, Inc. v. Worldwide Interactive Network*, No. 3:18-CV-186, 2020 WL 12574235, at *7 (E.D. Tenn. Mar. 24, 2020) ("under the *Noerr-Pennington* doctrine, owners of copyrights and trademarks may protect their rights "through litigation without exposing [themselves] to Sherman Act liability'").

Additionally, as detailed above, Plaintiff's Sherman Act allegations are based primarily on a select number of retailer agreements. ████████████████████ ████████████████████████████████████ ████████████████████████████ In other words, Plaintiff's claims do not demonstrate that Mr. Bhargava "actively and knowingly engaged in a scheme designed to achieve anticompetitive ends." *Brown*, 783 F.2d at 646.

To the contrary, Plaintiff's most recent allegations regarding Mr. Bhargava *support dismissal*. Plaintiff references a May 2024 article about Mr. Bhargava—alleging that he "remains deeply involved in the specifics, including personally

---

litigated to *a jury verdict and was determined not to be false advertising. Innovation Ventures, LLC v. N.V.E., Inc*., No. 08-11867, ECF No. 477, Jury Verdict.

approving new flavor formulations." (ECF No. 1, PageID.16, ¶ 56.) So what? There is nothing anti-competitive about taste testing! Yet that is Plaintiff's sole allegation against Mr. Bhargava that occurred within the applicable statute of limitations period. That was the best that Plaintiff's attorneys could muster against Mr. Bhargava, but it has nothing to do with engaging "in a scheme designed to achieve anticompetitive ends." *Brown*, 783 F.2d at 646.

Critically, the very article Plaintiff relies on for ¶ 56 supports a finding that Mr. Bhargava is not individually liable. (Ex. 11.) First, the article indicates that "a couple of years ago he [Bhargava] hired Jeffrey Sigouin from elsewhere in the consumer-goods industry to helm the 5-hour brand." (*Id.* at p. 7.) Mr. Sigouin being put in charge of the 5-hour brand makes it clear that Mr. Bhargava is not actively engaged in any alleged anticompetitive schemes or false advertising asserted in this Complaint. *Brown*, 783 F.2d at 646.

Second, the article describes the plethora of endeavors that fill Mr. Bhargava's days, which have nothing to do with the corporate Defendants or 5-hour Energy. Those endeavors include:
- Forming 11 startups;
- Significant international philanthropy;
- Running a media company (including Sports Illustrated);
- Development of a portable reverse-osmosis system to supply clean water to poor areas of the world;
- Development of power generators for remote villages; and
- Development of a device to treat Alzheimer's.

(Ex. 11.) The notion that Mr. Bhargava is micromanaging the way a select few convenient stores display competing products, like Plaintiff's products, is not realistic or supported by Plaintiff's Complaint.

The remainder of Plaintiff's Sherman Act allegations try to shoehorn in Mr. Bhargava under the generic label of "Defendants." (ECF No. 1, PageID.56-63, ¶¶ 199-238.) However, those allegations fail to allege specific acts by Mr. Bhargava and constitute nothing more than conclusory allegations that the generic "Defendants" violated the Sherman Act. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1024 (10th Cir. 1992). They should be disregarded, and the Court should dismiss Plaintiff's Sherman Act allegations against Mr. Bhargava.

### 2.    Plaintiff has not properly pled that Mr. Bhargava is individually liable for the alleged false advertising

Although "[i]t is well-established law that employees and corporate officers can be held individually liable under the Lanham Act *when the employee or corporate officer personally takes part in the infringing activity or directs others to do so*," Plaintiff's Complaint fails to establish Mr. Bhargava's personal involvement in the alleged false advertising. *Days Inn Worldwide, Inc. v. Adrian Motel Co., LLC*, No. 07-13523, 2009 WL 3199882, at *11 (E.D. Mich. Sept. 30, 2009).  The claim should be dismissed.

Plaintiff's complaint contains 66 paragraphs of allegations regarding false advertising—spanning several pages. (ECF No. 1, PageID.37-55, 63-65, ¶¶ 145-198,

239-251.) However, not a single allegation alleges, plausibly or otherwise, how Mr. Bhargava personally took part in the allegedly wrongful acts. (*Id.*) The only statement in the entire Complaint that references Mr. Bhargava and false advertising pertains to the civil conspiracy claim, which includes only a conclusory allegation that "Two or more of Defendants Bhargava, Living Essentials, International IPH, and Innovation Ventures engaged in concerted action to falsely advertise the 5-hour ENERGY products." (*Id.* at PageID.66, ¶ 256.)

So, even that allegation doesn't point specifically to Mr. Bhargava; it merely alleges that ***only two*** of the Defendants may have been involved in false advertising. The only false advertising claim naming Mr. Bhargava isn't even conclusive that Mr. Bhargava had any involvement in the alleged false advertising! Plaintiff's silence as to Mr. Bhargava's personal involvement in the alleged false advertising is deafening. The Court should dismiss Plaintiff's false advertising allegations against Mr. Bhargava as an individual.

### 3. Mr. Bhargava's actions as a corporate officer does not render him separately liable for civil conspiracy

Despite failing to establish liability for the Sherman Act claims and for false advertising, Plaintiff includes a claim for civil conspiracy on those causes of action against Mr. Bhargava as an individual. Plaintiff does not allege that Mr. Bhargava holds a specific position within the corporate defendants—it just generically alleges that Mr. Bhargava "founded or directed the founding of, controlled, and continues to control Living Essentials, International IPH, and Innovation Ventures." (ECF No. 1, PageID.4, ¶ 13.) Such conclusory allegations are insufficient. *Iqbal*, 556 U.S. at

678. Thus, Plaintiff hasn't sufficiently alleged that Mr. Bhargava had the requisite involvement in the alleged claims.

However, to the extent it is found that Plaintiff sufficiently plead Mr. Bhargava's involvement, he cannot be found individually liable in view of the intra-corporate conspiracy doctrine. Indeed, "Michigan applies an 'intra-corporate conspiracy' doctrine, which holds that *a cause of action does not exist for civil conspiracy between a corporation and its agents, employees, officers, and directors* when they are acting within the scope of their employment or agency authority." *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp.2d 1254, 1275 (M.D. Fla. 2013); *Landmark Sav. & Loan v. Loeb Rhoades Hornblower & Co.*, 527 F.Supp. 206, 209 (E.D. Mich. 1981); *Tropf v. Holzman & Holzman*, No. 257019, 2006 WL 120377, at *1 (Mich. Ct. App. Jan. 17, 2006). At most, Plaintiff's allegations against Mr. Bhargava establish that his actions were within the scope of his employment authority for the corporate Defendants and thus barred by the intra-corporate conspiracy doctrine. Plaintiff's civil conspiracy claims should be dismissed against Mr. Bhargava.

### III.   CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice all claims against the Defendants.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated: <u>February 10, 2025</u>

<u>/s/ Christopher C. Smith</u>
Marc Lorelli (P63156)

Thomas W. Cunningham (P57899)
Chelsea E. Pasquali (P77375)
Christopher C. Smith (P73936)
Francesca M. Cusumano (P85410)
150 W. Second St., Suite 400N
Royal Oak, Michigan 48067-3846
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email:  mlorelli@brookskushman.com
         tcunningham@brookskushman.com
         cpasquali@brookskushman.com
         csmith@brookskushman.com
         fcusumano@brookskushman.com

*Attorneys for Defendants*

34