**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VITAMIN ENERGY, INC.,

Plaintiff,

Case No. 24-13125
Hon. Jonathan J.C. Grey

v.

MANOJ BHARGAVA, et al.,

Defendant.
_______________________________/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RELIEF OF JUDGMENT (ECF No. 30) AND DENYING AS MOOT PLAINTIFF'S MOTION FOR STATUS CONFERENCE REGARDING PLAINTIFF'S MOTION FOR RELIEF (ECF No. 36)**

Plaintiff Vitamin Energy, Inc. ("Vitamin Energy") moves this Court for relief from the Court's August 29, 2025 order granting defendants' motion to dismiss and the following judgment (ECF Nos. 28–30.)

The Court finds that the parties have adequately briefed the motion and therefore considers it without oral argument. E.D. Mich. LR 7.1(f). For the reasons stated below, the Court **DENIES** Vitamin Energy's motion for relief (ECF No. 30) and **DENIES AS MOOT** its related motion for status conference (ECF No. 36).

## I. BACKGROUND

On November 22, 2024, Vitamin Energy filed a civil complaint against Defendants Manoj Bhargava, Living Essentials, L.L.C., International IP Holdings, LLC, and Innovation Ventures, LLC (collectively, "defendants"). (ECF No. 1.) Vitamin Energy alleges that defendants maintain a monopoly in the energy shot market in violation of the Sherman Anti-Trust Act (the "Sherman Act"), 15 U.S.C. § 1, et seq. (*Id.*) Vitamin Energy also alleges that defendants commissioned false advertising in violation of the Trademark Act, 15 U.S.C. § 1125(a)(1)(B), and committed civil conspiracy to maintain their monopoly. (*Id.*)

On February 10, 2025, defendants filed a motion to dismiss (ECF No. 19), which the Court granted on August 29, 2025 (ECF No. 28). On September 12, 2025, Vitamin Energy filed a motion for relief under Federal Rules of Civil Procedure 59(e) and 60(b)(1)–(2). (ECF No. 30.) In its motion, Vitamin Energy requests that the Court: (1) amend its opinion and order changing the Court's finding from dismissal with prejudice to dismissal without prejudice, and (2) allow Vitamin Energy to file an amended complaint "to add sworn testimony gathered after the close of briefing along with additional information bolstering its claims." (*Id.* at

PageID.800, 818.) The motion only addresses the Court's dismissal of Vitamin Energy's antitrust claims (Counts I and II). (*Id.* at PageID.801.) Vitamin Energy does not move for relief from the Court's decision on its false advertising (Count III) or civil conspiracy (Count IV) claims. (*Id.*)

On June 2, 2026, Vitamin Energy requested a status conference to discuss its motion for relief. (ECF No. 36.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 60(b)(1), the Court may relieve a party from a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect." The Court may also do so under Rule 60(b)(2) for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[,]" and under Rule 60(b)(6) for "any other reason that justifies relief." Relief pursuant to Rule 60(b)(6) is available "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule" and "only as a means to achieve substantial justice." *Tanner v. Yukins*, 776 F.3d 434, 443 (6th Cir. 2015) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)).

Similarly, under Federal Rule of Civil Procedure 59(e), "motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). A Rule 59(e) motion "does not permit parties to effectively re-argue a case." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quotation marks omitted). Additionally, "parties should not use [Rule 59(e) motions] to raise arguments which could, and should, have been made before judgment [was] issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

## III. ANALYSIS

### A. Relief from Mistake

Vitamin Energy relies on Rule 60(b)(1) and maintains that this Court erred by applying "a too-high standard at the motion to dismiss stage." (ECF No. 30, PageID.814.) Vitamin Energy contends that the Court did not accept all of Vitamin Energy's factual allegations as true and did not draw all reasonable inferences in its favor as required. (*Id.*) Not so.

In its order granting defendants' motion to dismiss, the Court found that "Vitamin Energy's complaint fails to allege that Defendants' counter rack placement and rebate agreements constitute an antitrust injury" because: (1) a multi-year agreement between a supplier and a retailer amounts to legitimate competition, not an antitrust injury; and (2) Vitamin Energy fails to allege that defendants' counter rack placement and rebate agreements caused market harm because Vitamin Energy's claims are speculative. (ECF No. 28, PageID.776, 779.) The Court takes each of these findings in turn, addressing Vitamin Energy's arguments for relief from judgment.

**First,** as to the Court's finding that a multi-year agreement between a supplier and a retailer amounts to legitimate competition, the Court explained that Vitamin Energy itself entered into a counter rack placement and rebate agreement with Pilot that mirrors defendants', indicating that a counter placement agreement with retailers is not out of the norm in the energy drink business. (ECF No. 28, PageID.777–778.) The Court continued, stating that "[t]o the extent that Vitamin Energy alleges that Defendants' agreements required some level of exclusivity, this argument is weakened by Vitamin Energy's continued presence in

Pilot stores." (*Id.* at PageID.777.) The Court also noted that Vitamin Energy does not allege that defendants used illegitimate means to secure the counter rack placement and rebate agreements, and Vitamin Energy's conclusory statements that the agreements were "illegal" and "anticompetitive" do not suffice to withstand a Rule 12(b)(6) motion. (*Id.* at PageID.778.)

In its motion for relief from judgment, Vitamin Energy argues that the Court erred because the complaint distinguished between Vitamin Energy's and 5 Hour's[1] agreements—the latter excluded competition whereas the former did not. (ECF No. 30, PageID.815 (citing ECF No. 1, PageID.20).) Vitamin Energy agrees that there is nothing intrinsically improper about a counter placement agreement, but when it excludes competition, as was allegedly the case here, then the Sherman Act applies. (*Id.* at PageID.815–816.) However, the Court considered the argument that "Defendants' agreements required some level of exclusivity" that Vitamin Energy's agreements did not. (ECF No. 28, PageID.777.) Thus, accepting as true Vitamin Energy's position that its

[1] Defendants market and sell 2-ounce energy shots under the name 5-hour Energy. (*See* ECF No. 1, PageID.2.)

agreement differs from 5 Hour's agreement does not alter the Court's outcome, as it is insufficient to withstand the dismissal under Rule 12(b)(6).

"[E]xclusive agreements in some instances may create impermissible barriers for new entrants to a market and may permit a supplier to charge monopoly prices." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 452–454 (6th Cir. 2007). Vitamin Energy alleges that the exclusivity of 5 Hour's agreement creates barriers for it and other energy shot sellers in the energy shot market.

Vitamin Energy previously explained the exclusive nature of the agreements in its response to defendants' motion to dismiss.

> To even qualify for a rebate, a retailer must (a) [redacted], (b) [redacted], (c) [redacted], (d) [redacted], and (e) [redacted] [Motion at Ex. 1] Importantly, to qualify for a rebate, the retailer also [redacted]. [Motion at Ex. 1]
>
> When put in context, these requirements necessarily exclude competition. Retail counter space boosts sales and is limited – so, it is precious, as stated in the Complaint [36].

(ECF No. 22, PageID.719–720 (internal quotation marks omitted).)

The Court relies on *NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007), as it did in its order granting defendants' motion to dismiss. In *NicSand, Inc.*, the plaintiff gained a large share of the market for do-it-yourself automotive sandpaper—that is, until the defendant offered the large retailers greater up-front discounts and longer exclusive agreements than the plaintiff had offered in the past or was willing to offer in the future. *Id.* at 447. The Sixth Circuit affirmed the district court's dismissal of plaintiff's Sherman Act claims under Rule 12(b)(6). *Id.* at 459. The Sixth Circuit held that the exclusivity of the agreements did not establish the requisite anticompetitive injury where *retailers* made supplier exclusivity a barrier to entry (not suppliers) and where the plaintiff offered no explanation why it could not compete for these multi-year agreements nor why it could not match the defendant's discounts. *Id.* at 454. The court also noted that "[w]hile [plaintiff] complains about the up-front discounts [defendant] offered, it does not allege that [defendant] was selling below cost," indicating a goal of recouping losses by charging monopolistic prices later. *Id.* at 455.

Similar to the plaintiff in *NicSand*, Vitamin Energy claims that it lost business and sales after defendants entered into exclusive

agreements with some kind of financial incentive.[2] By Vitamin Energy's own explanation, 5 Hour's agreements exclude competition because retail counter space is limited. The Court interprets this as retailers in effect making supplier exclusivity a barrier to entry, even if unintentional and due to limited counter space.[3] The Court further notes that the complaint includes photos of Vitamin Energy's counter display racks in 2020, which do not include any other competitor's products in the Vitamin Energy rack—one of the issues it identifies with 5 Hour's agreement requirements. (ECF No. 1, PageID.21.) Like the plaintiff in *NicSand*, Vitamin Energy fails to explain why it could not compete for these multi-year agreements nor why it could not match 5 Hour's rebates (or indeed, why offering rebate incentives is illegal or anticompetitive). Nor does Vitamin Energy allege that defendants were selling below cost. Thus, even accepting as true that Vitamin Energy's and 5 Hour's agreements

[2] In *NicSand*, the incentive was in the form of an up-front discount, and here, the incentive is in the form of a rebate.

[3] The Court acknowledges this case differs from *NicSand* where the retailers in *NicSand* made exclusivity a *condition* for doing business with a new supplier. But here, if a retailer has limited counter space and can only display limited products at point of sale pursuant to counter rack placement agreements (even agreements like Vitamin Energy's allegedly anticompetitive agreement), the Court interprets this as an exclusivity condition imposed from the retailer's end and not the supplier's—i.e., some competitors will necessarily be excluded due to a limitation imposed by the retailer.

with convenience stores differed, Vitamin Energy still did not plead sufficient facts to allow the Court to conclude that defendants' agreements are anticompetitive.

The only case Vitamin Energy cites in support of its position is *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002). Vitamin Energy relies on *Conwood Co., L.P.* to show that "the Sixth Circuit has reviewed exclusionary agreements like the one pleaded here and found that they can constitute an actionable antitrust injury." (ECF No. 35, PageID.1059.) However, the Sixth Circuit ultimately found that the defendant's conduct went beyond "the normal competitive process" where the defendant pervasively destroyed the plaintiff's racks and used its monopoly power to misrepresent sales activity. *Conwood Co., L.P.*, 290 F.3d at 783–784, 787 n.4. In doing so, the Sixth Circuit explicitly responded to the defendant's argument that "exclusive dealing arrangements with retailers cannot be invalid, absent a 'particularized showing of unreasonableness,'" and noted that the plaintiff's "claim is *broader than merely challenging the exclusive agreements* [defendant] entered into with retailers for exclusive racks." *Id.* at 787 n.4 (emphasis

added). In contrast, Vitamin Energy has only alleged the exclusive nature of the counter rack placement and rebate agreements.[4]

**Second,** Vitamin Energy argues that the Court failed to accept as true its harm allegations. (ECF No. 30, PageID.816.) The Court found that "simply losing a competitive placement on the counter does not harm competition overall where Vitamin Energy has alleged that it continued to make substantial profit at Pilot even *after* allegedly losing its counter placement." (ECF No. 28, PageID.777.) Vitamin Energy contends that "as a direct result of 5 Hour's anticompetitive activity, Vitamin Energy has actually *never* been able to make a profit." (ECF No. 35, PageID.1061.)

Even if the Court inadvertently conflated sales with profit, its conclusion remain unchanged. Indeed, if Vitamin Energy never made a profit—both before and after 5 Hour's counter rack placement and rebate agreements—the Court cannot find that the counter rack placement and rebate agreements were the cause of Vitamin Energy's failure to make a profit or take market share away from 5 Hour. And the complaint does

[4] The Court dismissed Vitamin Energy's false advertising claim (ECF No. 28), and Vitamin Energy does not move for relief from judgment on that claim.

not allege other specific anticompetitive conduct that predated these agreements for the Court to consider.[5]

Moreover, Vitamin Energy's economic injury is not the type of injury antitrust laws address. *See Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 978 (6th Cir. 2000) ("Such an injury to a competitor, rather than to competition, is not the type of injury to which the antitrust laws address themselves."). The Court explained that "Vitamin Energy's complaint fails to allege that Defendants' counter rack placement and rebate agreements caused market harm because Vitamin Energy's claims are speculative." (ECF No. 28, PageID.779.)

Vitamin Energy posits that the complaint alleged harm to other energy shot brands that are relegated to placement at a back aisle and the market by reducing consumer choice. (ECF No. 30, PageID.817.) However, consumers still have choice—even if not at the check-out

[5] The complaint alleges facts to establish that 5-Hour Energy attained and retained market dominance and has market power (ECF No. 1, PageID.8–9), but even so, "merely because an entity has monopoly power, does not bar it from taking advantage of its scale of economies because of its size . . . Such advantages are a sequence of size and not the exercise of monopoly power." *Conwood Co., L.P.*, 290 F.3d at 783 (internal quotation marks omitted) (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 597 (1985)). Thus, the factual allegations related to 5-Hour Energy's market power that predates the agreements do not change the Court's analysis or outcome.

counters—and the agreements at issue are "of limited duration" and retailers are free to "investigate alternative" energy shot counter rack placement agreements "in future contractual dealings." *Indeck Energy Servs., Inc.*, 250 F.3d at 978; (*see, e.g.*, ECF No. 1, PageID.35 (email from Huck's Market representative in response to Vitamin Energy inquiry stating "I just revamped my energy shots and completed a new display with 5-hour. I have a contract with them for the next 2 years and not able to make changes currently. After that, we may reevaluate!").) And while Vitamin Energy claims, in its motion for relief, that the market harm includes "the higher prices that consumers must pay for energy shots because of 5 Hour's monopolistic practices," (ECF No. 35, PageID.1058), the original complaint never alleged that consumers paid higher prices (*see generally* ECF No. 1).

Additionally, Vitamin Energy's allegations of harm to other energy shot market entrants are conclusory and unsupported by sufficient factual allegations. For instance, Vitamin Energy alleged that "[p]lacement of energy shots on the counter at the point of sale is so important that Defendants' efforts in preventing that placement raises a significant barrier to entry to the energy shot market." (ECF No. 1,

PageID.26; ECF No. 35, PageID.1063.) However, Vitamin Energy includes no factual support for this assertion. Vitamin Energy further alleged that "[o]n information and belief, other energy shots . . . that had been displayed at or near the POS point-of-sale in Pilot Flying J stores also suffered significant sales declines," but again, this merely shows injury to a competitor, rather than to competition—the type of injury antitrust laws are meant to address. Indeed, placement of energy shots on the counter may very well be important and result in economic harm in the form of reduced sales, but that alone, looking at the evidence in the light most favorable to Vitamin Energy, is not sufficient for the Court to conclude antitrust injury and barrier to entry to the energy shot market.

Accordingly, the Court finds that Vitamin Energy is not entitled to relief from judgment pursuant to Rule 60(b)(1).

### B. Relief from Newly Discovered Evidence

Vitamin Energy also relies on Rules 59(e) and/or 60(b)(1)–(2) to seek the opportunity to amend its complaint because it "can now present newly[]obtained corroborative evidence from 5 Hour's corporate representative and another of its witnesses that goes to the heart of the Court's concern with the original Complaint." (ECF No. 30, PageID.810.)

Specifically, between March and June 2025, Vitamin Energy deposed several 5 Hour Energy witnesses in another case and allegedly secured admissions "that are relevant to the import of counter placement for energy shots." (*Id.* at PageID.811–812.)

"To prevail on a motion brought pursuant to Rule 59(e), newly discovered evidence 'must have been previously unavailable.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (quoting *GenCorp*, 178 F.3d at 834). "[T]he newly discovered evidence must be of such a nature as would probably produce a different result, and it is well-settled that the requirements for newly discovered evidence are essentially the same under Rule 59(e) and 60(b)(2)." *Doe v. Baum*, 282 F. Supp. 3d 972, 978 (E.D. Mich. 2017) (internal quotation marks and citations omitted).

Contrary to Vitamin Energy's assertions, the "core reason for the Court's grant of dismissal" (ECF No. 30, PageID.810) was not that the Court did not credit the importance of counter placement or Vitamin Energy's harm allegations. As discussed above, Vitamin Energy's complaint was deficient in other critical respects. Moreover, "corroborative evidence" from 5 Hour's corporate representative and witnesses is unnecessary at the motion to dismiss stage where the Court

takes all Vitamin Energy's allegations as true—as it did in the initial review of the motion to dismiss and now in the context of the motion for relief. Put simply, this newly discovered evidence is not necessary and "is not of such a nature as would . . . produce a different result." *Doe*, 282 F. Supp. 3d at 978 (internal quotation marks and citations omitted).[6] Therefore, Vitamin Energy is not entitled to relief from judgment pursuant to Rule 60(b)(2) or Rule 59(e) due to newly discovered evidence.

### C. Leave to Amend

Finally, Vitamin Energy asks the Court to apply the liberal standard of Rule 15(b) to allow it to amend its complaint. (ECF No. 30, PageID.811.) However, "while Rule 15 plainly embodies a liberal amendment policy, in the post-judgment context, [the Court] must also take into consideration the competing interest of protecting the 'finality of judgments and the expeditious termination of litigation.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (citation omitted). "When a party seeks to amend a complaint after an adverse judgment, it [ ] must shoulder a heavier burden [than if the party sought to amend a complaint

[6] The parties dispute whether the evidence is newly discovered within the meaning of Rules 60(b)(2) and 59(e). (*See* ECF No. 33, PageID.1045–1047; ECF No. 35, PageID.1063.) Because the Court finds that even if the evidence is newly discovered it would not produce a different result, the Court need not address that issue.

beforehand]. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60." *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014) (internal quotation marks and citations omitted).

Vitamin Energy fails to satisfy the heavier burden required for a party seeking to amend a complaint after an adverse judgment. Moreover, because the proposed amended complaint (ECF No. 32) does not address the deficiencies discussed in Section III.A., the Court finds amendment would be futile. *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres., Dep't of Hous. & Urb. Dev., City of Louisville*, 632 F.2d 21, 23 (6th Cir. 1980) ("It is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss."). Therefore, the Court **DENIES** Vitamin Energy's request to amend the complaint.

### D. Motion for Status Conference Regarding Vitamin Energy's Motion for Relief

On June 2, 2026, Vitamin Energy requested a status conference with the Court to discuss its motion for relief. (ECF No. 36.) Because the Court **DENIES** Vitamin Energy's motion for relief from judgment, the Court finds no need to conduct a status conference and **DENIES AS**

**MOOT** Vitamin Energy's motion for status conference.

## IV. CONCLUSION

For the reasons stated above, Vitamin Energy's motion for relief from judgment (ECF No. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that Vitamin Energy's motion for status conference (ECF No. 36) is **DENIED AS MOOT**.

**SO ORDERED.**

**s/Jonathan J.C. Grey**
Jonathan J.C. Grey
United States District Judge

Date: August 21, 2026

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 21, 2026.

s/ S. Osorio
Sandra Osorio
Case Manager